UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sandy Lake Band of Mississippi
Chippewa,

          Plaintiff,

v.

United States of America; Ken Salazar, as
Secretary of the Interior; Larry Echo Hawk,
as the Assistant Secretary for Indian Affairs;
Jodi Gillette, as Acting Deputy Assistant
Secretary for Policy and Economic
Development, Indian Affairs; and Diane
Rosen, as Regional Director, Midwest
Regional Office, Bureau of Indian Affairs,

          Defendants.

Civil No. 11-2786 (DWF/LIB)

**MEMORANDUM
OPINION AND ORDER**

_____

Lester J. Marston, Esq., Rapport and Marston; and Suzanne W. Kvas, Esq., Lehmann & Lutter, PA, counsel for Plaintiff.

Bahram Samie, Assistant United States Attorney, United States Attorney's Office; and Kenneth Rooney, Esq., United States Department of Justice, Environment and Natural Resources Division; Marcia M. Kimball, United States Department of the Interior, counsel for Defendants.

_____

**INTRODUCTION**

      This matter is before the Court on a Motion for Partial Summary Judgment brought by Plaintiff Sandy Lake Band of Mississippi Chippewa ("Plaintiff" or the "Sandy Lake Band") (Doc. No. 9); and a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment brought by Defendants United States of America; Ken

Salazar, Secretary of the Interior ("Secretary"); Larry Echo Hawk, Assistant Secretary for Indian Affairs; Jodi Gillette, Acting Deputy Assistant Secretary for Policy and Economic Development, Indian Affairs; and Diane Rosen, Regional Director, Midwest Regional Office, Bureau of Indian Affairs (collectively, "Defendants") (Doc. No. 6). For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendants' motion.

## BACKGROUND

Plaintiff brought a previous lawsuit against the United States and several employees of the Department of Interior, asserting claims for Violation of the Federally Recognized List Act of 1994 ("List Act"); Violation of the Indian Reorganization Act, 25 U.S.C. § 461, *et seq.* ("IRA"); Violation of the Administrative Procedure Act ("APA"); Violation of the Fifth Amendment; and Breach of Trust, List Act, and IRA. The Court dismissed Plaintiff's claims, without prejudice, for failing to exhaust its sole administrative remedy—the Federal acknowledgement process. *See Sandy Lake Band of Mississippi Chippewa v. United States*, Civ. No. 10-3801, 2011 WL 2601840, at *4 (D. Minn. July 1, 2011) ("*Sandy Lake I*").

Plaintiff then brought the present action, alleging the following claims: Counts One and Two—Violation of the IRA; Counts Three, Four, and Five—Violation of the APA; Count Six—Breach of Trust. (Doc. No. 1, Compl.) In the present action, Plaintiff challenges the Secretary's decision that Plaintiff was not eligible for an election to organize a tribal government pursuant to Section 476 of the IRA (an "IRA election" or "Secretarial election"). Many of the relevant facts of this case were set forth in the

Court's prior order dismissing Plaintiff's complaint in *Sandy Lake I*. *See generally Sandy Lake I*, Civ. No. 10-3801, 2011 WL 2601840. The Court summarizes and supplements the facts below.

Plaintiff describes itself as "an Indian tribe that was recognized as being under the jurisdiction of the United States on June 18, 1934." (Doc. No. 1, Compl. ¶ 4.) Defendants are the United States of America and certain officers or employees of the United States Department of the Interior with direct or delegated responsibilities to carry out government-to-government relationships with Indian tribes and provisions of the IRA. (Compl. ¶ 5.)

Congress passed the IRA in 1934. The purpose of the IRA was, among other things, to facilitate economic development of Indian reservations and to encourage Indians to organize tribal governments. (Compl. ¶ 7.) For example, Section 476 of the IRA authorizes tribes to organize a tribal government by adopting a written constitution, which becomes effective when ratified by a majority vote of the adult members of a tribe at a special election called by the Secretary. *See* 25 U.S.C. § 476.

Congress has restricted the eligibility for benefits under the IRA to persons who meet the statutory definition of "Indian." Eligible Indians can request a Secretarial election to adopt a constitution. 25 U.S.C. § 476. Section 479 of the IRA provides, in part:

> The term "Indian" as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian

3

>reservation, and shall further include all other persons of one-half or more Indian blood.

25 U.S.C. § 479.  Congress delegated to the Secretary the authority to promulgate rules and regulations governing Secretarial elections:

>( a) Adoption; effective date
>
>Any Indian tribe shall have the right to organize for its common welfare, and may adopt an appropriate constitution and bylaws, and any amendments thereto, which shall become effective when—
>
>(1) ratified by a majority vote of the adult members of the tribe or tribes *at a special election authorized and called by the Secretary under such rules and regulations as the Secretary may prescribe . . .*

25 U.S.C. § 476(a)(1) (emphasis added).  Those regulations are codified in Title 25 of the Code of Federal Regulations, Part 81.

In 1934, the Secretary of the Interior conducted elections on the Indian Reservations in Minnesota for the purpose of allowing the tribes and Indians residing on the reservations to vote on whether they wanted the provisions of the IRA to apply to them and their respective reservations.  (Doc. No. 12, Skinaway Decl. ¶ 9.)  The Secretary held an election under the provisions of the IRA to allow various tribes and bands in Minnesota to organize a tribe called the Minnesota Chippewa Tribe.  (*Id.* ¶ 10.)  A polling place was maintained at Sandy Lake to allow members of the Sandy Lake Band to vote on the proposed constitution, but no members of the Sandy Lake Band cast a ballot.  (*Id.*)  In 1936, a majority of the tribes and bands of Chippewa Indians residing on various Indian reservations in Minnesota organized a single tribal government under a

4

written constitution, the Constitution of the Minnesota Chippewa Tribe ("MCT Constitution").  (Compl. ¶ 12; Skinaway Decl. ¶ 11.)

As noted in *Sandy Lake I*, the MCT Constitution states that it "shall apply to the White Earth, Leech Lake, Fond du Lac, Bois Fort (Nett Lake), and Grand Portage Reservations, and the nonremoval Mille Lacs Band of Chippewa Indians." (*Sandy Lake I*, 2011 WL 2601840, at *1 (citing Civ. No. 10-3801, Doc. No. 16, Ex. 2 at 1).)  Moreover, on February 16, 1939, the Chippewa Indians of the Mille Lacs Reservation ratified and accepted the Charter of Organization of the Mille Lacs Band of Chippewa Indians ("MLB Charter").  (*Id*. (citing Civ. No. 10-3801, Doc. No. 16, Ex. 3 at 7).)  The MLB Charter defines membership in the Mille Lacs Band of Chippewa Indians as consisting of

> [a]ll Chippewa Indians permanently residing on the Mille Lacs Reservation and at, or near, the *Villages of . . . Sandy Lake*, Minnesota, on the adoption of this Charter, and their descendants, whose names appear on the approved roll of the Chippewa Tribe as determined by Sections 2 and 3 of the Constitution of the Minnesota Chippewa Tribe.

(*Id.* (citing Civ. No. 10-3801, Doc. No. 16, Ex. 3 at 2) (emphasis added).)

On May 29, 1980, in response to a request from the Bureau of Indian Affairs ("BIA") for an opinion regarding the jurisdictional status of the Sandy Lake Reservation, a Field Solicitor for the United States Department of the Interior stated that "the Chippewas residing at Sandy Lake have been considered Chippewa of the Mississippi and part of the group known as the Mille Lacs Band" and that "the Mille Lacs Band is the political successor of the historic Sandy Lake Band."  (Civ. No. 10-3801, Doc. No. 1, Compl. ("*Sandy Lake I Compl.*") ¶ 43, Ex. 23 at 2.)  Further, in June 1998, the Chief of

5

the Division of Tribal Government Services issued a letter to members of the Sandy Lake Band providing instruction regarding the federal acknowledgment process, and stated that "[i]n order to officially place your group on our priority register, we will need a formal expression from the group's governing body which states specifically that the group is petitioning for Federal acknowledgment and that the action is authorized by the group's governing body." (Civ. No. 10-3801, Doc. No. 16, Ex. 1 ¶ 25.) Additional letters were sent to members of the Sandy Lake Band between 1991 and 2006 addressing the federal acknowledgment procedure. (*Id.* ¶¶ 26, 28, 30-40.)

*Sandy Lake I* was initiated after Plaintiff requested reorganization (or a Secretarial election) under Section 476 of the IRA. (Compl. ¶ 13.) On or about July 27, 2007, the Superintendent of the Minnesota Agency of the BIA sent a letter in response enclosing an August 1, 2006 letter from the Associate Solicitor of Indian Affairs, which stated that "it is clear that the Sandy Lake Band would not as a matter of law be eligible for acknowledgment under the Department's existing regulations" but "[s]ince the Sandy Lake Band has not petitioned the Department for acknowledgment, this letter can not be construed as a determination under [25 C.F.R. Part 83]." (Compl. ¶ 14, Ex. B.) The Sandy Lake Band appealed the July 27, 2007 decision. (*Id.* ¶ 15.) In an August 28, 2007 letter from the Midwest Regional Director for the BIA, the appeal was denied and Plaintiff was advised that it was not eligible to request a Secretarial election until there is a final determination through the federal recognition process or legislative recognition of the group. (Compl. ¶ 15, Ex. C.)

After appealing the decision unsuccessfully, Plaintiff filed suit in *Sandy Lake I* challenging the Secretary's denial. The United States moved to dismiss the *Sandy Lake I* complaint on the grounds that the Sandy Lake Band was not eligible to request a Secretarial election because it was not federally recognized and because this Court lacked subject matter jurisdiction due to the Sandy Lake Band's failure to exhaust its administrative remedies, namely its failure to invoke the federal acknowledgment process. In opposition to the motion to dismiss, the Sandy Lake Band argued that the regulatory scheme governing Secretarial elections should be overturned because 25 C.F.R. § 81.1(w) contradicts the definition of Indian tribe in Section 479 of the IRA, and filed an amended complaint requesting that the Court declare the regulatory scheme null and void.

The Court dismissed *Sandy Lake I*, holding that the Sandy Lake Band failed to exhaust its administrative remedies and the Court lacked subject matter jurisdiction over the Sandy Lake Band's claims that relate to the requested IRA election. (*Sandy Lake I*, 2011 WL 2601840, at *5.) The Court explained:

> The Court concludes that the Sandy Lake Band has failed to exhaust its administrative remedies. The Court respectfully rejects the Band's contention that 25 C.F.R. § 81.1(w) contradicts the definition of Indian tribe in 25 U.S.C. § 479. Rather, by requiring an entity seeking an IRA election to first request federal acknowledgment, the regulations ensure that the evidence the Sandy Lake Band offers in support of its claim that it qualifies as an Indian tribe under Section 479 will be presented to the appropriate agency with the requisite expertise and established regulatory process. The Defendants have repeatedly and consistently informed the Sandy Lake Band that it must file a petition for federal acknowledgment as the first step in the Band's effort to seek an IRA election, but the Band has failed to do so. Accordingly, the Band has failed to exhaust its

7

> administrative remedies and this Court lacks subject matter jurisdiction over the Band's claims that relate to the requested IRA election.
>
> . . .
>
> The Court also respectfully rejects the Sandy Lake Band's argument that 25 C.F.R. § 81.1(w) contradicts 25 U.S.C. § 479 as interpreted by the Supreme Court in *Carcieri v. Salazar*, 555 U.S. 379 (2009). *Carcieri* held that the term "now under Federal jurisdiction" refers to Indian tribes under Federal jurisdiction in 1934. The effect of this holding is that the Secretary may not expand the definition of Indian tribes eligible for an IRA election to include those not under Federal jurisdiction in 1934. It does not follow from this result that requiring an entity to first seek federal acknowledgment before requesting an IRA election exceeds the authority granted to the Secretary.

(*Sandy Lake I*, 2011 WL 2601840, at *4 & n.3.) The Sandy Lake Band did not appeal. On September 28, 2011, the Sandy Lake Band brought the present action. Defendants now move to dismiss, or in the alternative, for summary judgment. The Sandy Lake Band moves for partial summary judgment. The Court considers the pending motions below.

## DISCUSSION

### I. Motion to Dismiss and Summary Judgment Standards

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id*. at 555. As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

9

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Plaintiff's Participation in IRA Election

Defendants move to dismiss for failure to state claim or for summary judgment, arguing that Plaintiff already participated in an IRA election, electing to organize during the 1930s as a part of the Minnesota Chippewa Tribe and the component Mille Lacs Band. In particular, Defendants assert that the Department of Interior's 1980 opinion concluding that "the Chippewas residing at Sandy Lake have been considered Chippewa of the Mississippi and part of the group known as the Mille Lacs Band" and that "the Mille Lacs Band is the political successor of the historic Sandy Lake Band" is conclusive as to the Sandy Lake Band's reorganization and inclusion as part of the Mille Lacs Band and Greater Chippewa Tribe. (*See Sandy Lake I Compl*. ¶ 43, Ex. 23 at 2.) Defendants assert that Plaintiff cannot now circumvent that agency action and that Plaintiff is not entitled to another Secretarial election until they either petition the Mille Lacs Band and Minnesota Chippewa through the tribes' established, internal tribal mechanisms or they

10

complete the federal acknowledgement process and the BIA determines that they are a federally recognized tribe separate from the Mille Lacs Band.

Plaintiff opposes dismissal on this ground and asserts that Defendants have not properly supported their contention that the Sandy Lake Band participated in the IRA election to organize the MCT, and that the contention cannot be considered by the Court. Plaintiff submits that Defendants' reliance on the statements of a Field Solicitor contained in a 1980 opinion are merely assertions upon which Defendants cannot rely to support their present motions.

Having considered the parties' arguments on the matter, as well as the materials cited in support, the Court declines to determine whether the 1980 opinion is conclusive on the matter of whether Plaintiff participated in an IRA election. Instead, the Court turns to the parties' arguments on the merits of the present motions.

## III.   Res Judicata

Defendants argue that Plaintiff's claims in this action are barred by the doctrine of res judicata. In particular, Defendants assert that Claims Two (violation of the IRA) and Three (violation of the APA) "are lifted in their entirety from the Original Complaint that was dismissed for lack of subject matter jurisdiction" and that Count One (violation of the IRA), Five (violation of the APA), and Six (Breach of Trust) are "copied wholesale from Plaintiff's Proposed Amended Complaint that failed to cure subject matter jurisdiction" in *Sandy Lake I*. (Doc. No. 7 at 15.) Defendants assert that because these previously asserted claims were never appealed, they cannot be relitigated via this new action.

Plaintiff argues that this case does not meet the requirements for dismissal under the doctrine of res judicata, as there has not been a final judgment on the merits. In particular, Plaintiff asserts that in *Sandy Lake I*, the Court dismissed Plaintiff's claims without prejudice for lack of jurisdiction, and therefore Counts Two, Three, and Four are properly before the Court in this action. In addition, Plaintiff contends that res judicata does not apply to the Complaint in this action because the basis for jurisdiction in the Complaint is different than the complaint in *Sandy Lake I*.

The dismissal of a lawsuit for lack of subject matter jurisdiction bars the relitigation of the same jurisdictional issue in a subsequent lawsuit. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982). In *Sandy Lake I*, Plaintiff sought review of Defendants' decision denying the election request. *Sandy Lake I*, 2011 WL 2601840, at *4. The Court dismissed Plaintiff's lawsuit, finding that Plaintiff had failed to exhaust its administrative remedies because it failed to invoke the federal acknowledgement process. *Id*. The Court reasoned that "by requiring an entity seeking an IRA election to first request federal acknowledgement, the regulations ensure that the evidence the Sandy Lake Band offers . . . will be presented to the appropriate agency with the requisite expertise and established regulatory process." *Id*. In its newly alleged Counts Two and Three, Plaintiff again attempts to seek review of Defendants' decision to deny Plaintiff's election request. Moreover, Count Four simply introduces a new theory as to why the Court should have reached a different result in *Sandy Lake I*. (Compl. ¶¶ 46, 47 (alleging a violation of the APA on the basis that the "Secretary refused to consider the Tribe's argument" that it was an "Indian tribe within the meaning

of 25 U.S.C. § 479, and, therefore, was eligible for an IRA Election")).  However, Plaintiff still has not engaged in the Federal acknowledgment process.  Thus, Plaintiff has again failed to exhaust its administrative remedies and has not overcome the jurisdictional problem that led to the Court's dismissal of the same claims in *Sandy Lake I*.  Therefore, Claims Two, Three, and Four are properly dismissed.

In Claims One, Five, and Six, Plaintiff challenges the Secretary's promulgation of regulations governing Secretarial Elections.  In particular, Plaintiff alleges that 25 C.F.R. § 81.1(w) (the "Regulation" or "Section 81.1(w)") is void because it conflicts with Sections 476 and 479 of the IRA, and that the Secretary's reliance on the Regulation therefore violated the IRA.  (*See, e.g.*, Compl. ¶¶ 21, 22, 51, 52, 54, & 60.)  While Plaintiff did not initially make this challenge in *Sandy Lake I*, Plaintiff did raise the argument in opposition to the defendants' motion to dismiss and attempted to amend its complaint to comport with the new argument.  In *Sandy Lake I*, the Court dismissed Plaintiff's Complaint, concluding that all of Plaintiff's claims arose from Defendants' denial of Plaintiff's request for an IRA election and that subject matter jurisdiction did not exist for those claims.  *Sandy Lake I*, 2011 WL 2601840, at *4-5.  The Court rejected Plaintiff's Proposed Amended Complaint because it was untimely filed, and Plaintiffs did not obtain Defendants' consent or leave of the Court.  *Id*. at *1 n.1.  Later in the opinion, the Court noted that the "proposed Amended Complaint fails to cure the lack of subject matter jurisdiction over [Plaintiff's] claims." *Id*. at *5 n.4.

Defendants now argue that because the Court opined that the proposed Amended Complaint failed to cure the lack of subject matter jurisdiction, Plaintiff is barred from

relitigating Claims One, Five and Six. In *Sandy Lake I*, the Court's discussion of subject matter jurisdiction as it related to the proposed Amended Complaint was brief and noted in a footnote. Therefore, the Court will reach the viability of Claims One, Five, and Six on the merits below.

**IV.   Claims One, Five and Six**

In its Complaint, Plaintiff argues that Section 81.1(w) is not valid because it conflicts with the plain meaning of Section 479 of the IRA and federal court precedent interpreting the same. Specifically, in Count One, Plaintiff contends that Section 81.1(w) imposes conditions for conducting IRA elections that Congress never intended and conflicts with the judicial interpretations of the IRA, and that the Secretary acted in excess of the Secretary's authority in violation of the IRA by relying on Section 81.1(w). (Compl. ¶¶ 21-22.) In Count Five, Plaintiff alleges that the promulgation of Section 81.1(w) was arbitrary and capricious and in direct violation of the IRA. (Compl. ¶ 54.) In Count Six, Plaintiff alleges that Defendants breached its trust duty to Plaintiff under the IRA by failing to adopt Plaintiff's interpretation of the phrase "any recognized Indian tribe now under Federal jurisdiction" contained in Section 479. (Compl. ¶ 61.) Defendants argue that the Secretary's regulations governing Secretarial elections comport with the plain language and purpose of the IRA. Both parties move, respectively, for summary judgment on this issue.

Section 476 authorizes any Indian tribe to organize a tribal government under a written constitution adopted at an election called and conducted by the Secretary. 25 U.S.C. § 476. Section 479 defines "Indian tribe" as "any recognized Indian tribe now

under Federal jurisdiction." 25 U.S.C. § 479. Section 81.1(w) of the regulations contains the following definition of "Tribe":

> (1) Any Indian entity that has not voted to exclude itself from the Indian Reorganization Act and is included, or is eligible to be included, among those tribes, bands, pueblos, groups, communities, or Alaska Native entities listed in the FEDERAL REGISTER pursuant to § 83.6(b) of this chapter as recognized and receiving services from the Bureau of Indian Affairs; and (2) any group of Indians whose members each have at least one-half degree of Indian blood for whom a reservation is established and who each reside on that reservation. Such tribes may consist of any consolidation of one or more tribes or parts of tribes.

25 C.F.R. § 81.1(w). Section 81.1 thus limits eligibility for IRA elections to Indian entities included, or eligible to be included, among the entities listed in the Federal Register as recognized and receiving services from the BIA.

The parties agree that in determining whether Section 81.1(w) is valid, the Court must analyze the regulation under *Chevron U.S.C. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). "First, always, is the question whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842-43. In that first step, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*.

Here, the Court must determine whether the statute makes clear the intent of Congress as to the meaning of "any recognized Indian tribe" or if the statute is silent or ambiguous as to the meaning of that term. Plaintiff contends that the definition of "recognized Indian tribe now under Federal jurisdiction" contained in Section 479 is clear and unambiguous, and that it means that a tribe must: (1) at any time, including 1934, be

15

federally recognized; and (2) in 1934, be under the jurisdiction of the Federal government. (Doc. No. 17 at 16.) Defendants contend that that the statute is silent, and therefore ambiguous, as to what constitutes a "recognized Indian tribe" in Section 479. Defendants further contend that Section 81.1(w), which requires federal recognition, is consistent with Congress' intent that eligibility be limited to "any recognized tribe now under Federal jurisdiction."

Section 479 authorizes the Secretary to call a Secretarial Election, but limits the eligibility to "any recognized Indian tribe now under Federal jurisdiction." 25 U.S.C. § 479. The IRA does not provide context as to how the Secretary should determine whether a particular group of Indians constitutes a "recognized Indian tribe." Instead, the statute is ambiguous.[1] Therefore, the Court moves on to the second step of the *Chevron* analysis.

In step two of the *Chevron* analysis, the Court determines whether the agency's definition is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 842 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the

---

[1] Plaintiff argues that the argument that Section 479 is ambiguous is contrary to the holding in *Carcieri v. Salazar*, 555 U.S. 379 (2009). The Court disagrees. In *Carcieri*, the Supreme Court held that the term "now" as used in Section 479 was unambiguous and imposed a temporal restriction on Indian tribes "under Federal jurisdiction." 555 U.S. at 392, 395. The Supreme Court in *Carcieri* did not reach the issue of whether the term "any recognized Indian tribe" was ambiguous. Nor did the Supreme Court conclude that an Indian tribe must have been federally recognized in 1934 to be eligible for IRA benefits. *Id.* at 397-98.

statute."); *see also Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998); *Baptist Health v. Thompson*, 458 F.3d 768, 774-75 (8th Cir. 2006). If the agency defines a term in a reasonable way in light of the Legislature's design, the Court gives that definition controlling weight. *Regions Hosp.*, 522 U.S. at 457 (citing *Chevron*, 467 U.S. at 843 n.11.)

After careful consideration of the parties' arguments, the Court concludes that Section 81.1(w) is consistent with the definition of "any recognized Indian tribe" in Section 479.[2] For an Indian tribe to be eligible to request a Secretarial election under Section 476, that tribe must meet the definition of Indian in Section 479; Section 479 in turn limits eligibility to "*any recognized Indian tribe* now under Federal jurisdiction."[3] 25 U.S.C. § 479 (emphasis added). As discussed above, the term "recognized Indian tribe" is not defined in the IRA. Section 81.1(w)'s requirement that an Indian tribe be included or eligible to be included on the list of federally recognized tribes is consistent

---

[2]     Plaintiff argues that Section 81.1(w)'s construction of the statute is at odds with the Department of Interior's longstanding interpretation of the statute. The Court disagrees. Instead, Defendants have convincingly pointed out that the historic considerations utilized by the Department of Interior are incorporated into the regulations.

Plaintiff also argues that the canons of statutory construction for statutes enacted for the benefit of Indians compel an interpretation in favor of Plaintiff and that Indian law canons trump deference due under *Chevron*. Plaintiff, however, has not provided any binding authority from the Eighth Circuit; nor has Plaintiff established that the canons would apply here.

[3]     The statute does not, as Plaintiff suggests, apply to "all tribes who were under Federal jurisdiction on June 18, 1934." Such an interpretation completely ignores the separate requirement of federal recognition.

with the requirement that an eligible tribe be "recognized" and is based on a permissible construction of the statute. Moreover, Section 81.1(w) is consistent with the Supreme Court's interpretation of Section 479 in *Carcieri v. Salazar*, 555 U.S. 379 (2009). *Carcieri* held that the term "now under Federal jurisdiction" refers to Indian tribes under Federal jurisdiction in 1934. As explained in *Sandy Lake I*, the effect of this holding is that the Secretary may not expand the definition of Indian tribes eligible for an IRA election to include those not under Federal jurisdiction in 1934. It does not follow from this result, however, that requiring an entity to first seek federal acknowledgment (or to be included or eligible to be included on a list of federally recognized tribes) before requesting an IRA election exceeds the authority granted to the Secretary.

It also bears repeating that by requiring an entity seeking an IRA election to first request federal acknowledgment, the regulations ensure that the evidence Plaintiff offers in support of its claim that it qualifies as an Indian tribe under Section 479 will be presented to the appropriate agency with the requisite expertise and established regulatory process.

For the above reasons, the Court concludes that Counts One, Five and Six of Plaintiff's Complaint fail as a matter of law and are therefore properly dismissed.

## CONCLUSION

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

    1.    Plaintiff's Motion for Partial Summary Judgment (Doc. No. [9]) is **DENIED**.

2.     Defendants' Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment (Doc. No. [6]) is **GRANTED**.

3.     Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 4, 2011                          s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge